Thank you, Your Honors. May it please the Court. Despite all the ways that the District Court and the appellees have characterized Section 187042, the law doesn't really do anything that remarkable. The law simply protects agricultural production facilities from unwanted intrusions and harmful conduct in the same way that many other state and federal laws do. This is a time-honored and legitimate exercise of a state's police powers. The District Court nevertheless invalidated the law on First and Fourteenth Amendment grounds. In doing so, it erred for three basic reasons. First, there is no First Amendment right to enter property or obtain records by misrepresentation. Neither is there a First Amendment right to make a misrepresentation to obtain a job offer if the person intends to harm the business. Given the existence of numerous state criminal statutes with regard to trespass, fraud, false statements, doesn't the prosecution have to look at the content of the entry in order to determine whether or not this statute is violated? Certainly, Your Honor. In a prosecution, the state would have to prove that there was a misrepresentation. By misrepresentation, we, of course, mean a knowing false statement of fact. I'm not referring as much to the means by which entry is made, but what happens once the person is on the premises? In other words, as I read this statute, if the person videotapes or reports on observations made that somehow harms the agricultural enterprise, that's a crime. But if they do a nice puff piece that extols the virtues of the facility, that that's not necessarily a violation of the law. Am I reading the statute correctly? I don't think I agree with that, Your Honor. And let me explain. Subsection 1D prohibits all unconsented-to recording on closed or nonpublic government-owned property. And so it doesn't matter at all whether the resulting publication or information is favorable or unfavorable. You can get restitution for favorable coverage? For favorable coverage. Right. If somebody, for example, 1D includes employees, would it not? Yes, that's right. So it's anybody. It could be a news reporter, an employee, a family friend, correct? That's right. It would apply to anybody who goes on to the... And the only kind of recording that's prohibited, it's tailored to the conduct of agricultural production, correct? That's right. The statute refers to recording of the conduct of the agricultural production facilities. Now, we read that to mean that the law restricts any recording on an agricultural production facility. And so... And so why audio and video and not print and not photographs? I don't have an answer for you in terms of why the legislature chose audio and video and not print. I think that there... Well, isn't the answer that what the legislature was upset about, for good reason or otherwise, is they were concerned about reporters going into agricultural facilities and doing exposés. That's basically the motivating factor for the law, isn't it? The motivating factor certainly may have been some of the conduct that had occurred on those facilities. But the purpose of the law, and I think that that's the key distinction here, the purpose of the law, especially relating to your question, subsection 1D, is to prohibit the recording, not necessarily to... But not the recording of the, what you said, of the agricultural facilities. No. The statute reads, production facilities operation. That's quite different. Oh, versus anything that occurs on there. The privacy and arrest may be to prohibit any video or any other recording of the premises of the private property. But that's not what the statute in D says. It says it prohibits operations of the agricultural operations. And even if that's the case, if the court... Not even if that's the case. That's what it says. And under that reading, we would still say that the law passes First Amendment scrutiny, because what we're dealing with here is two potential types of property. One is a non-public forum for government-owned property, and the other is closed private property, where we know, under Lloyd Corp and the other related cases, that there's no First Amendment right to make those recordings in the first place. And all this law does is require the person to get consent, much like the way that some states' trespass statutes work, and the way some of the hunting trespass statutes work. We have a trespass statute in Idaho. We do. So if somebody goes onto a property without permission, and there's a posted sign of no trespass, would that not be a crime of trespass? So under that law, if the property is posted under the law, then that would be a trespass. I mean, that's why it seems odd to have this statute, which is really investigative news and that kind of thing, because if you wanted, you could just arrest somebody under the trespass statute, no? No, not necessarily, because the property has to be posted. And so it doesn't necessarily reach a situation where the property isn't posted, but somebody nevertheless goes on the property and makes the recording. What this does is this simply requires a person to go on the property or to ask the owner for the permission to make the recordings. And there is... I'm sorry, Your Honor? If an actor entered the production facilities of Micron in Boise and recorded the production facility in operation, would that be a violation of this statute? Assuming that Micron would fit the definition of a... Well, I'm not sure that it would. I don't think... I don't think it does. No, I don't think Micron... So what's unique about agricultural production facilities that require special protection, not available to other businesses in Idaho that might be the subject of some sort of muckraking or expose? I mean, maybe Micron, and I'm just using this as a hypothetical, but maybe the computer company is exposing its employees to toxic chemicals in the production facility. I think there's a couple of points there. The first is that Micron, and I'm guessing that other technological firms that are enclosed in big buildings, are a fortress to get into. And so a lot of agricultural production facilities may not be. They're family dairy farms. The farms, the dairy farms in Idaho are family owned. They might be on wide open tracks of land that may not have the kind of security that a place like Micron or some of the other facilities would. And so in the legislature's judgment, and this is an entirely rational opinion or entirely rational basis, though in the legislature's judgment, facilities where agricultural products are produced may warrant a special degree of protection. What about the privacy? I mean, let me go back to your privacy issue. You're suggesting here that part of the reason for the statute rests with the privacy of the Yes, privacy. And there's two points on that. So let me ask you then more specifically, oftentimes this is reference to livestock operations, but it could apply to beekeeping too, right? Presumably, yes. So what is, does a beehive have any privacy interest? The beehive itself? Yes. The beehive doesn't necessarily have privacy interest, but what the interest here, there's two interests at stake. One is the property owner's right to control the terms and use of entry. But that's a trespass. That's not a privacy that you're talking about. Sure. And so maybe my answer is that it protects a, that privacy is the reason we protect the landowner's interest in being able to control and to exclude. And that is the interest that we have asserted that justifies the prohibition on recording. What about Simplot? Simplot's a corporation over in Idaho that's well known, right? That's right. They're usually involved more with potatoes than certain other agricultural products, but does the corporation have any privacy interest? The corporation may exclude anyone that it wants and may control the conditions of use on its property as it wants. But that doesn't answer the question. And that, my question is whether the corporation as an I'm sure that the corporation has a privacy interest. What would be your best support for that? My best, well, just that the businesses... Corporations don't have privacy interests in terms of, except as protected by statute under trade secret and otherwise, but there's not a constitutional privacy interest, is there? No, but they have a constitutional interest in their right to exclude and control. And that's, I think that the interest... That's not an inchoate privacy interest. That's what we're struggling with here. It keeps coming back to trespass, which is, this is my property and I want you to stay off of it. And that's what I'm understanding is really the major complaint here, right? Is stay off of my property. The interest that we're trying to protect here is people coming onto the property, which for agricultural production facilities, be it Simplot or somebody else, may be wide and open and potentially accessible. The interest that we're protecting is the owner's right to determine what occurs on that property. Is that it? I read D more broadly than that, that the interest the legislature was trying to protect was to preclude the recording of the operations of the facility once access was obtained. That's right. And so when I say that the interest is in allowing the owner to control what goes on, the interest is in prohibiting the recording unless it's consented to. Because all this statute really does is require the person who wishes to record to obtain permission. It doesn't curtail any other rights other than requiring the person to get the permission in the first place before he or she records. But what is troubling to me, and maybe you can explain how it fits in your analysis, what's troubling to me is particularly section or subsection D because it tells you what you can't record about. You can't make a recording about an agricultural production facility's operations. So it sounds like you could go on there and make a recording about everything else but that. So why isn't that a content-based restriction? Again, we've read that it limits the recording on a production facility. But under that analysis, it may be content-based in the sense that a person would have to look at where the camera is aimed. But that isn't fatal by any stretch to our position. Because if we're dealing with, the place where the recording occurs is very important, I think, here. This is an important distinction that I think the district court and the appellees have overlooked. And that is, if we're dealing with government-owned property, it only applies in what would be characterized as a non-public forum. And in that situation, Perry Education Association would control. And of course, Perry says that the law only need be viewpoint neutral and reasonable. And if we're dealing with... But it isn't viewpoint neutral. It's directed to the operations only and only to pejorative reports of the operations. Because a favorable report wouldn't trigger restitution. Am I missing something? I think so, Your Honor. I disagree with what followed with the and. If it does limit the recording of the agricultural facilities' operations, it doesn't then distinguish on the basis of viewpoint. Meaning, the statute on its face does not say videos that are subsequently published that are favorable can be punished, whereas videos or cannot be punished, whereas videos that are unfavorable or harmful can be. Let me ask you another hypothetical. Suppose that a television news crew was given permission to come onto the property and was filming the operations and some unfortunate event occurred, say, similar to what apparently triggered the legislature to act here. And at that point, the owner of the property said, please don't broadcast what you just filmed. Would that be a violation of subsection D? If the television station went ahead and broadcast it? No. Because it wouldn't be a violation of subsection 1D. Because 1D only reaches to the act of unconsented to recording. But in my hypothetical, the consent was revoked at the point that the incident occurred. And the landowner said, please don't record that. And don't play it. So the subsequent publication would not violate 1D. Now, there may be a civil action between the landowner and the person who made the recording. The statute says, and without the facility owner's consent. Right. And I'm suggesting to you that consent was revoked in the middle of the hypothetical. So aren't both elements met? Is the person still recording after the consent is revoked? Yeah. Then, yes. Then, then. That would be a violation. And the way we would know that is. The way we would know if there's a violation once consent has been revoked is if the red light on the camera is still on. Or if the phone or the camera is still recording. It says nothing about whether it's published later or not. It's the recording that's unconsented to that makes the difference for our purposes. Let me ask you a different. Go ahead. There's a question asked by Judge McKeown that I'd like to follow up on. If you agree that subsection D is content based, did you say that that doesn't invoke strict scrutiny because it's private property rather than public property? That's right, Your Honor. And what case is that? That's Perry Education Association. Well, that, I'm sorry, that deals with non-public government owned property. The, because there is no right, our position is that because there is no right to make recordings or to go on to private property for the purpose of making investigations or gathering information, because there is no right to do that, that the law only has to be rational. And I think that is a natural derivative of or a natural consequence of the Lloyd Corp case. If there's no First Amendment right to do a particular activity on a particular place, then the First Amendment is not triggered. But let me ask you as a practical matter. I'm looking at subsection A and I grew up in Wyoming, which has a lot of land that looks a lot like Idaho, a lot of empty land. Some of it has fences, some of it doesn't. Got a lot of farms, got a lot of ranches. So somebody could just walk, because of the description that you gave me before of certain family farms or other facilities that don't really have any security, if you will, somebody could just walk on to one of those, right? And they could do that without using force. If, say, just walk on to a piece of property, right? And you could also do it without using threat, correct? That's right. Or without misrepresentation. I mean, just walk on, right? And you don't see anybody, you just walk over there, right? Yes, it's possible that a person could, could have the right signs, then I wouldn't even be trespassing. That's, that's right, Your Honor, because under our... What good is A? I mean, in other words, what is the function of A? Because it doesn't really, you say the concern here is that people are going to come on to these large, unprotected properties. But A really focuses on using speech to get on to the property as opposed to just me some concern as I actually look at how practically will that help anyone? How will the misrepresentation provision help? Yeah, if you don't meet anyone. You don't talk to anybody, but you just go there. That's right, Your Honor. And then in that situation, there may not be, the landowner may have made the choice not to fence the property or otherwise preclude entry. But what, what the misrepresentation provision in 1A deals with is it says, look, if somebody is going, wants to enter the property and has to meet somebody in order to do that, then if that person makes a knowing false statement of fact that allows the entry, then the crime has been, has occurred. And so I think that's the situation where it would apply. Could you, in your view, if misrepresentation were excised from the statute in A, B, and C, would the statute still be able to stand? Yeah, it would, Your Honor, because Section 2 of the bill that passed contained a severability clause and under state law, the remainder provisions would, would there, the misrepresentation would not then be so integral that it could not be severed. Thank you. If I could reserve the balance of my time unless the Court has any further questions. You may. Thank you, Your Honor. We took a lot of your time for this. Thank you, Your Honor. May it please the Court. Good morning. I'm Justin Marceau on behalf of the Plaintiff Appellees. This case presents an example of what the U.S. Supreme Court in U.S. v. Playboy described as a, quote, law intended to suppress or restrict expression. The legislative history, the context, and the operation of this law allow you to resolve this case in a straightforward, uncomplicated way as to each section. The undisputed catalyst for the law is a 2012 undercover investigation that revealed horrific criminal animal abuse. The legislative response was swift and unequivocal. The industry group that drafted the law described it as necessary in order to knock activists off of their, quote, soapbox. Representative Pence stated, quote, this bill would have never surfaced if the investigators had not released the footage to the Internet and authorized petitions calling for a boycott. Many others emphasized that this point, this law was necessary in order to keep, quote, the agricultural industry out of the court of public opinion. And perhaps most revealing as to the purpose and viewpoint restrictive nature of this law is the restitution provision discussed in our briefs at pages 7 and 8. Counsel, I'd like to direct your attention to subsection A. What's unconstitutional about prohibiting someone from entering by force, threat, misrepresentation, or trespass? Your Honor, if I may, I think that goes to the heart of this case as to the misrepresentation. So what is the harm here at issue? And I think there's a lot there. And I think that there's two important answers to that question. The first is what I was just getting at, which is that the Supreme Court has held that in any circumstance where there is a speech suppressing motive, you don't actually have to even decide whether there's speech at question. But this is a facial challenge to the statute, is it not? Absolutely, Your Honor. But it's also an as-applied challenge. So if that's the case, is the focus then solely on the word misrepresentation? You're not quarreling that the state has the lawful police power to prohibit criminal trespass to property? That's absolutely right, Your Honor. We're focused on the misrepresentation. For force or threat. That's correct, Your Honor. Although I will note, I mean, our allegations are to misrepresentation alone. If this statute is content-based, which is where I was going, and viewpoint-based, a restriction on threats is exactly the scenario that was in R.A.V. v. St. Paul. We have not alleged a desire to engage in any threats. But I just want to note that. Mr. Marceau, may I ask you a question? Yes, please. You just stated it's a facial challenge. Yours is a facial challenge? It's a facial challenge under over-breath also. As to the whole statute? Your Honor, it's a facial challenge as to sections A through D. We are no longer challenging E because the state has conceded that it applies only to physical damage. But A, B, and C would apply to somebody who, through misrepresentation or trespass, entered an agricultural production facility, opened the barn door, and let the cows out. Do you think that that would not be punishable? Excuse me, Your Honor. Your scenario is a true trespass where somebody enters and... Right. Your Honor, as I said to Judge McEwen, we're not challenging that in your language. A, B, and C under the Salerno test, if any application is valid, A, B, and C are valid. Well, Your Honor, with... Without D. Your Honor, with all due respect, I think I would answer that in two ways. The first is that a facial challenge under the First Amendment is governed by the over-breath doctrine, which says you don't have to, as in Salerno, show that every application of the statute is unconstitutional, just a substantial number of the applications. But second, I would note that plaintiff's challenge here, paragraph 21 of their complaint, is also an as-applied challenge. The focus of this lawsuit, unequivocally, is about the restrictions on the peer speech of misrepresentations and the restrictions on recording. But who's it being applied to? This really is a facial challenge, is it not? I mean, we're not faced here with a criminal conviction and an appeal from someone who has been punished under the statute. That would be an as-applied challenge. Or a threat as a result of a particular incident. So how is it as-applied? Your Honor, there is no case that suggests that you could not have an as-applied challenge in a pre-enforcement context. What we need is . . . If you have a threat to . . . Your Honor, we do have a credible threat of . . . By the existence of the statute that has yet to be applied? Absolutely, Your Honor. The threat? Yes, Your Honor. And the prosecutors have indicated . . . What's your strongest case to support that argument? Well, Your Honor, under Susan B. Anthony v. Dryhouse from the Supreme Court, a credible threat of prosecution is . . . does not require the prosecutors to promise to prosecute. It requires an intention to use the statute. There has never been a disavowal to prosecute. The plaintiffs have stated an expressed desire to engage in particular conduct. They filed this lawsuit within weeks of the law being enacted. Idaho passed this as a, quote, emergency measure so that it could be enforced immediately. Right? It took a special step to say that they would prosecute this as soon as it was enacted, which is a special measure. But again, if the court prefers to look at this as a facial challenge and consider whether certain provisions or terms can be severed, that's entirely consistent with the plaintiff's complaint. And we're open to it. Well, if that's true, is the term that you're focused on in A, B, and C misrepresentation? Yes, Your Honor. Okay. If I may return just briefly to the sort of central point that I think animates this case, which is that the primary object of the First Amendment, Your Honors, is the discovery of improper speech suppressing motives. And Sorrell v. IMS Health is the leading case for that. And it's in our brief. In that case, the Vermont legislature, excuse me, passed a law prohibiting the sale or distribution of medical prescriber information. So this was raw data. It was data being sold to data miners. And what the Supreme Court said was, quote, even assuming this case can be resolved, excuse me, this case can be resolved even assuming the data is merely a commodity and not speech. So they didn't have to go into the inquiry. And the reason was because the law was designed to impinge speech. It was, quote, a purpose to suppress speech. This is entirely consistent with the RIV v. St. Paul case, which held that even something that is, quote, not speech at all, as in true threats, um, fall within the First Amendment protection if there is a purpose to suppress the speech that is animating the provision. So RIV v. St. Paul... But is your position that B is unconstitutional if misrepresentations are used to obtain records from the facility? Where's the speech inherent in that? Well, Your Honor, I think it's a great question. I mean, obviously, central to our claim is the access point. And that's what we think hinders most investigative journalists. But Section B, like the others with access to records, is criminalizing the pure speech of misrepresentation. And the state's position, right? I mean, the state's position is ultimately that any benefit you obtain, whether it's getting to look at a record or getting access despite the existence of otherwise valid trespass statutes, that that takes it outside of Alvarez and it's unprotected. Well, you took... You represented to us that Salerno would be met if there were a significant number of situations where the conduct would be unconstitutional or would be constitutional. And I'm wondering in B, obtaining records of the facility by forced threat, misrepresentation or trespass, it seems to me that that would establish, would it not, a significant number of lawful prosecutions for people who improperly obtain records of the facility? Your Honor, I think there are a large number of situations where misrepresentations in order to access documents would result in something that is legally prescribable. But the misrepresentation is basically for the purpose of surreptitiously obtaining the record. It doesn't have anything to do with speech about the production facility's operations, does it? Your Honor, I think I fundamentally agree with you. I am far less concerned with the access provision than I would focus the Court's attention on. So should we really be looking at D? That's the one that gives you the greatest heartburn. A, B, and C, it might actually be constitutional. I think A and C are absolutely essential. You're with me on B. B is okay. I'm not conceding that B is constitutional. The purpose of this lawsuit and the thrust of it is to challenge misrepresentations as a form of speech. And let me try to put this in a different frame. But the misrepresentation that you're really focusing on has to do with reporting on what goes on at the facility. And yet you're trying to get us to declare the statute unconstitutional with regard to unlawful entries, misrepresenting employment applications, which is a different, it seems to me, is entitled to a different level of protection than recording the activities of what's going on there. Your Honor, if I could take a moment to respond. I agree that the access provision presents different questions. I strongly disagree that misrepresentation falls outside of the First Amendment at the slightest suggestion that you gain some benefit or incur some harm. I do not think that's the holding of Alvarez. What the state has urged you to understand... The problem with your analysis, though, is that the act of, under B, the act of misrepresentation in order to obtain the record is not the protected speech. It's what happened next, right? No, Your Honor, I disagree. So what that reasoning turns on is an acceptance of the state's argument that only lies and nothing more are protected, that any benefit that you obtain, entry or otherwise, causes a harm. And that's not true, Your Honor. But let me ask the question a different way. Could you live with a declaration from our court that upholds the injunction, but on a narrower basis than what the district court ordered? The district court, as I understand it, joined all four... The whole statute. The whole statute. If we simply said the district court was correct with regard to D, but not A through C, wouldn't that basically address the bulk of the harm here? No, Your Honor, I'm trying to get out that there is a concrete cognizable speech issue in A through C. So what you're positing is that there is not protected speech if and when someone gains a benefit. For example, access. Let's focus on the access. Okay, A. A and C. Yeah, I strongly disagree. And we urge this court to look at the court's opinion in Alvarez, which recognizes explicitly that sometimes liars will gain a benefit. And that doesn't take the speech out. Justice Breyer's discussion of political fraud is particularly salient here. In short terms, what you're trying to say is that investigative journalists need to use subterfuge in some sense, that that speech, and you think that's protected. Is that a fair statement? Absolutely, Your Honor, but I would put it even more broadly than that. I would say two things. First, that the holding of Alvarez is not that falsity alone is what's protected. Justice Breyer says at 2556 in Alvarez, quote, in the political arena, a false statement is more likely to make a behavioral difference, say, by leading listeners to vote for the speaker. But at the same time, end quote, he goes on to say restricting that sort of lie would be, quote, particularly dangerous. It's not the case. And that's a harm to our democracy. That's someone that lies and says, vote for me because here is this platform. Vote for me. It's a specific lie. All of that doesn't really kind of get us to this case. So let's take the C, which is basically a variation on the food lion case, where you represent yourself as one thing in order to get employment. And it says here that if you used a misrepresentation and you intended to cause economic or other injury, then there could be a criminal conviction under this statute. Is someone who misstates their status in order to get employment but is going in because they want to see what's there and see if there are practices to be exposed, is that person subject to prosecution under this? Absolutely, Your Honor. As long as they have a motive of revealing embarrassing information or doing any sort of expose, and this could be a criminal conviction, this gets both to the restitution provision. What if I go in there with a clean hands and a clean head? And I just go with my camera. I go in with my camera. I don't know exactly what I'm going to find, but I've heard about stuff. I just don't know. Would I be off the hook or would I be subject? Your Honor, certainly you would be prosecuted. And the journalists, amicus briefs say that they fear prosecution. Now, whether you would have to face a jury and convince them that you went in with a totally clear mind. What Section 1C does is the economic injury that the state talks about in that means reputational harm flowing from truthful revelations. There's no question that it applies to that. The state has never said that the sort of undercover investigation and journalism that the plaintiffs intend to engage in would not be covered by this provision. There's a reason they haven't disavowed that. And the reason is they know that if plaintiffs engage in what they say they want to engage in, it will be criminalized by Section C. And to speak even more directly to your question, Section 1E is the section that addresses physical injury or physical harm. And as Judge Baio noted, the restitution provision absolutely does make this viewpoint based because someone who goes in with the motive of exposing worker abuse, like Upton Sinclair, that's why he went in. He went to show that there was harm with workers. Somebody that goes in with that motive and exposes something is exposed to double restitution penalties, whereas somebody that goes in to show a favorable day in the life of a farm is not subject to that. That taints the entire statute as viewpoint based. And there's no way around that. The entire statute is subject to the restitution provision. And to get back to Judge- Let me ask then under Alvarez, the plurality suggests there that false statements aren't necessarily protected if they're associated with illegally cognizable harm. Looking at subsection C, isn't economic or other injury a legally cognizable harm? You know, that's exactly why I said what I did. It is not. And the reason is that subsection C means reputational harm flowing from truthful revelations. It is not a legally cognizable harm. It's the very sort of undercover journalism and investigation that's at issue in this case. It says to cause economic or other injury to the facility's operations, leaving the barn door open and letting the cows out does that. Absolutely, Your Honor. So- And that means you can't prosecute the man? No, Your Honor. I think that's the question of whether you have to strike the entire provision or whether it's facially overbroad. There are subsets of misrepresentation with intent to cause injury that include physical damage like 1E does. But that's not all. There's a reason they use the term economic injury as opposed to physical injury and damage, which they use in 1E. And to make the point sharper, let me quote from you the excerpt of record 189 to 190. It's very clear, if you look at page 189 to 190, that the legislature here, this is quoting the drafter, that the drafter here wanted this to apply to peaceful people who want to investigate. Your question, Judge McKeown. He says, so look at subsection 1C. And then he says, this is at page 1, line 19. This directly addresses our scenario that has been so, that has resulted in the video that's been so widely publicized in the media. That's the investigation in 2012 he's referring to. Then he says, that's where one obtains employment by forced threat misrepresentation with the intent to cause economic injury to the facility's operations. That directly addresses the scenario where a person under false identity with the purpose to investigate and perhaps prosecute, as I have discussed in the media, obtains entrance to a farming facility. The purpose of this statute, the purpose of that provision, the economic injury, was to target the sort of employment investigation that occurred in 2012. But going back to the questions we asked before, I take it, if I came up to the farmer and I sort of like strangling and say, give me a job or else, you know, force and threat, you're not suggesting that would be okay? No, Your Honor, we'd be not. So you're saying it's if I say, oh, I like your farm, I'd love to work here. And then they, and I don't reveal that I'm from NBC News. That's what you're objecting to. Your Honor, the plaintiff's entire claim is that there is First Amendment protection for what we have called journalistic misrepresentations. So there's like a privilege that surrounds somebody, a journalist who is pure of heart in the sense that he's interested in gaining access to the facility in order to expose what's going on there. But other than that, he's not intending to leave the barn door open or set a fire or do something like that. Your Honor, you're right in the sense that it matters that his intent is not to cause economic injury. But I am not asserting any sort of journalistic exceptionalism. Quite the contrary. I'm saying that there's a First Amendment right that applies to a category of lies that journalists and investigators engage in. That is understating credentials, refusing to assert political affiliations. But why isn't this the next step beyond Alvarez? Alvarez says it might be a crime to misrepresent your status as a Medal of Honor holder if you're trying to obtain, let's say, VA benefits. And here, the legislature has said, you're making those misrepresentations with the intent to enter the facility to cause economic harm or injury. Isn't that a permissible legislative action in order to protect? No, it's not, Your Honor. I would say two things about that. The first, as I said, I think that you have to keep in mind that if this is a content-based restriction, even if you were to find lies to gain entry were not protected speech, a content-based restriction on lies to gain entry would still be unconstitutional. So how would it be... I see the content-based restriction on D. That kind of jumps right off the page. But I'm not seeing a content-based restriction on A, for example, unless we go to the underlying purpose. And that raises a question of, in this facial challenge, do we look to what the overall purpose is? Your Honor, I see that my time is running short. I would really like to answer the question I would really like you to answer my question and you will have time to answer all the questions. All right? So would you like me to answer Judge Tallman's question whether it's a trespass first and then your content-based question? Because this relates to the trespass. So first, Your Honor, I think this is absolutely central. There is not a trespass here, right? This goes to the line of question that Judge McKeown was addressing earlier. The state's argument that deception vitiates consent proves too much because if deception truly vitiated consent, every investigation that they're concerned about would already be a crime in the state. They know that it does not vitiate consent, i.e., create a tangible harm, because that's not the law. That's not the common law. That's not what the court held in Food Lion. It's not what the court held in Desnick, Judge Posner. And it's not what this court said in Deiteman. To quote Deiteman, quote, one who invites another into his home or his office takes the risk that the visitor may not be what he seems. This is not a harm that's cognizable at common law. And to be clear, these cases predated the Alvarez recognition that lies are protected. So it would be quite paradoxical for this court to hold that the lies at issue in Alvarez, which Justice Kennedy described as worthless and pathetic, are entitled to less protection than the lies at issue here, where investigative journalists have said, if we can't do this, we don't get to do the investigation that revealed the largest beef recall in the nation's history. Now, as to Your Honor's question about whether this is a content-based law, you're absolutely right, Your Honor, that Reed v. City of Gilbert prescribes what is called a, quote, two-step content neutrality analysis, where the, quote, first step is to look at the face of the statute, which is what we were just describing, and the second step involves an examination of, quote, the motives of those who enacted the law. That's Reed at 2229. And Reed makes clear that, quote, one must evaluate each question before it concludes that the law is content neutral. So as to the face of this statute, I think 1D is clearly facially content-based. It restricts recording of conduct of agricultural operations. Again, if the court is concerned about the state's argument that that... A, you can slow down a little. Sure. And also get to the heart of my question. And the heart of my question was whether, I said it looks like a content-based restriction on D, but the heart of my question was, in a facial challenge like this, can we use the legislative statements and the impetus for the law as part of our analysis? And if so, what would be the basis for that? Sure, Your Honor. I appreciate that. Your Honor, the Supreme Court, again, in Reed, said that we may look at the purpose or justification for the law. The state tries to divide purpose from motive, but there is no case that supports that. The last case that said you could not look at illicit motive in the First Amendment was the O'Brien case in 1968. The Supreme Court has consistently looked at legislative motive when it's relevant since that time. There's other cases including the Church of the Lukumi where they did so. But let me point you more specifically to three instances here where we could get to the purpose of this statute in pretty objective ways. The first is through the context and history, right? Arlington Heights at 267 says, quote, the specific sequence of events leading up to a challenge decision may shed some light on a decision maker's purpose. So if we want to talk about purpose, we don't have to go to the legislative record. We can look, as the Supreme Court has told us, at the events leading up to this. What are those events? Even in the passage I just read you taking one quote, he said it was a response to the media and the publication of the video from that investigation. That's highly relevant to discerning the purpose of this statute. That is relevant to whether it's content-based. Second, the restitution provision that's come up a few times. It is key to this case, Your Honor, and it taints every provision in the statute. Because the restitution provision makes whistleblowers liable for double any losses or expenses, the restitution provision has the practical effect of making the entire statute content-based. Those who want to expose wrongdoing are entitled to penalty or exposed to penalties. Those who want to show the farm as looking happy and good but do so undercover, like a restaurant critic, are not subject to the penalties. And finally, the legislative history in this statute, what the state calls motive, is relevant. Again, to quote Arlington Heights, when you're trying to divine legislative purpose, contemporaneous statements of members of the decision-making body, end quote, may be used. That's at 260. Thank you. I think we've let you go. But if there's questions, we do want to have you answer those. Could I have a question? Please. Your learned friend, at the end of his argument, I thought said, citing Cary Education, that there's no right to do an activity on a particular place, so there's no First Amendment right here. How do you answer that? Your Honor, if I could take a minute to answer that, it's a very important question. Your Honor, is that? Please. Your Honor, the state has argued that there is an error here because of the public forum doctrine, that we don't understand that this is private property and that there's no right to speak on private property. But the forum doctrine has to do with the government's ability to control its own property, the government as property owner. When can the government restrict speech? It's not like a normal property owner that can just say yay or nay to all speech. In fact, if it's a public forum or a non-public forum, it can't be viewpoint based. But the state misses here, what the state is missing, is that plaintiffs readily concede that private property owners have the absolute right to exclude any speech and all speech from their property. But what the state is seeking to do, and that's why they don't have a case that does this, is translate from the private right to exclude speech. You can exclude any speech you want from your property. They seek to translate from that a government right to pass a content-based law regarding laws. Your position is the First Amendment limits government. Absolutely. It's the criminalization that's the problem. Well, and content-based laws on private property have been struck down. That's Reed v. City of Gilbert. It applied to private property. RAV was a- I think what you're saying is anybody, any farmer could stand on his or her land and say, keep out, you can't film, and I don't want you, and we won't talk to you. Not only that, Your Honor, 18-7008, which the state doesn't mention, Idaho Code 18-7008, Section 8, says any farmer who says leave now, I don't like what you're doing, if the person doesn't immediately leave, is guilty of trespass. So they already have the trespass. They have absolute right to control their property. And the forum cases just don't add anything because it's about the government's limited ability to control their property. Government has property. Thank you, Your Honor. Mr. Withrow, let's see. How much time did we have left? OK, well, then we'll give you three minutes. Thank you, Your Honor. A couple of things. The lot issue in this case does not outlaw whistleblowing. The appellees in the district court stretched it far too broadly. It does not allow damages or prosecution for the simple reporting of information. And the appellees talked a lot about the restitution provision. So let's talk about that. Could I ask you this? Yes. What's your best case for the proposition that any information produced by crime cannot be distributed? The situation here is anybody who comes on misrepresentation or trespass and produces information, you want them to be prosecuted. I'm sorry, Your Honor. Could you ask that question again? I'm not sure I fully understood it. If the information is procured through the violation of a criminal statute, do you claim that that information cannot be disseminated? No, we do not claim that the statute allows. But that's right, Your Honor. We wouldn't try to stop the publication of that information that was gained. Even though it was criminally procured? Even though it was criminally procured. The restitution provision does not reach publication damages. The restitution provision refers to Idaho Code Section 1953-04. That provision, in short, and this is a gross overgeneralization, but it's accurate. It does not include less tangible losses like pain and suffering, emotional distress, those kinds of things. The restitution provision- Could it include reputational? No, it would not include that. Restitution is limited to economic loss. And economic loss refers to the value of property taken or harmed, lost wages, or other out-of-pocket expenses. And the Idaho Supreme Court has given it that construction. So if the publication of the abuses that triggered the legislature to act had resulted in a dramatic drop in demand for the dairy's products, then under this statute, that would not be a component of restitutional damages? That's right, Your Honor, because it wouldn't be the sort of damages that are allowable under the restitution. And the Idaho Supreme Court has said- Why isn't that an economic damage? Yeah. Because the economic loss is limited to the value of property taken or harmed, things that are very clearly quantifiable. Well, property, money is property, profits are property. So generally, for example, in a trade secret theft or whatever, you would have exactly that kind of damages provision, and it would include lost profits. So I'm having some trouble understanding why it wouldn't here. So there might be a civil action that the target could initiate, but that would be separate and apart from the restitution. You say that that interpretation which you've just given us, which I have to confess is quite novel, has been done by the Idaho Supreme Court? Yes. Could you give me the citation? If you can't do it right now, I'll tell you what you can do. We have some slips where you can write out the citation later, or you can send us a 28-J letter. That this restitution does not include reputational damages? It says what it does include, and then from that, we can say that it would not include the reputational damages. And that's what you're representing the Idaho Supreme Court has said? Yes. OK. You would like a 28-J letter? I will get that, Your Honor. Thank you very much. OK. If that is the end of my time, and unless the court has any further questions? Thank you, Your Honors. Thank you very much. Thank you all. Thank all counsel for your argument. Animal League v. Wadsden is submitted. We'll take a short recess, and then we'll be back for the remaining cases on the calendar.
judges: McKeown, Tallman, Bea